IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

LAZARO DESPAIGNE BORRERO                                             PLAINTIFF
Reg #12973-074

v.                                    2:16CV00061-DPM-JJV

UNITED STATES OF AMERICA                                             DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.  INTRODUCTION

Lazaro Despaigne Borrero ("Plaintiff") was, at all times relevant to this action, an inmate of the Forrest City Low Federal Correctional Institution. (Doc. No. 2 at 2.) He filed this *pro se* action pursuant to the Federal Tort Claims Act ("FTCA"), claiming the Defendant, United States of America, negligently failed to provide for his various medical needs. (*Id*. at 1.) Specifically, Plaintiff alleges prison personnel were negligent in failing to treat his injured right shoulder, right hip, lower back, and right lower extremity, as well as his diagnosed hiatal hernia, esophagitis, and diverticulosis. (*Id.*)

Plaintiff has filed a Motion and an Amended Motion for Partial Summary Judgment, asserting he is entitled to judgment as a matter of law on his claim that Defendant breached its duty of care by failing to approve the recommended treatment for his injured right shoulder – specifically, a total shoulder replacement. (Doc. Nos. 41-43, 48-51.) Defendant has filed a Motion for Summary Judgment, asserting it is entitled to judgment as a matter of law on all of Plaintiff's claims. (Doc. Nos. 53-55.) Responses have been filed, and these matters are ripe for disposition. (Doc. Nos. 56-57, 63-65.) After careful consideration of the pleadings, for the following reasons, I find summary

judgment in Defendant's favor is appropriate and this action should be DISMISSED.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. ANALYSIS

Because Defendant's Motion for Summary Judgment is dispositive, I begin my analysis there. Defendant seeks summary dismissal on three points. First, Defendant argues Plaintiff has failed to

meet his burden of proof for an action for medical injury because he has no expert testimony to support his case as required by law. (Doc. No. 54 at 1.) Defendant points out Arkansas law requires expert testimony to prove the elements of medical negligence – the standard of care, a deviation therefrom, and proximate cause – when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge. Ark. Code Ann. § 16-114-206(a). Second, Defendant argues summary judgment is required because Plaintiff has failed to meet proof with proof. (Doc. No. 54 at 1-2.) Defendant submits the Declaration of Dr. Te Cora Ballom, along with Plaintiff's medical records, to demonstrate the medical care providers at the prison were within the standard of care in their treatment of Plaintiff and there was nothing they did or did not do that caused Plaintiff any injury he would not otherwise have had. (*Id.*) Third, Defendant argues Plaintiff's allegations of intentional conduct and constitutional violations are not cognizable against the United States under the FTCA. (*Id.* at 21.)

### A. Medical Expert

In cases under the FTCA, courts are bound to apply the law of the state in which the acts complained of occurred. *Goodman v. U.S.*, 2 F.3d 291, 292 (8th Cir. 1993) (citing 28 U.S.C. § 1346(b)). Arkansas law provides as follows:

> (a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:
>
> > (1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;
> >
> > (2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and

4

>>(3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

Ark. Code Ann. § 16-114-206(a)(1)-(3).[1]

Defendant maintains the negligence asserted in this case would not lie within a jury's comprehension as a matter of common knowledge; therefore, expert testimony is required. (Doc. No. 54 at 10.) The Arkansas Supreme Court has observed that "[t]he vast majority of our cases to have considered this issue hold that expert medical testimony is necessary because the alleged medical negligence is not within the comprehension of a jury of laymen." *Mitchell v. Lincoln*, 366 Ark. 592, 599 (2006). Likewise, I find Plaintiff's claims would probably not be within a jury's comprehension as a matter of common knowledge, particularly on the issue of the standard of care. Expert testimony is certainly not required on the issue of whether Plaintiff experienced pain, *see id.* (citing *Watts v. St. Edward Mercy Med. Ctr.*, 74 Ark. App. 406 (2001)), and if Plaintiff were alleging a complete lack of treatment, a jury would be able to discern negligence without the assistance of expert testimony. However, the evidence submitted in support of the parties' summary judgment motions reveals Plaintiff did receive some treatment; the question presented is whether it was sufficient. In particular, Plaintiff's primary claim is that prison personnel should have approved him for a total shoulder replacement, as recommended by an orthopedist, rather than pursuing a more conservative course of treatment involving steroid injections. (Doc. No. 2 at 6-7.) The applicable standard of care for a shoulder injury like Plaintiff's is likely not within the comprehension of a jury of lay persons.

---

[1] *See Broussard v. St. Edward Mercy Health Sys., Inc.*, 2012 Ark. 14, at 7-8 (finding unconstitutional the provisions in section 16-114-206(a) that provide expert testimony may only be given by medical care providers of the same specialty as the defendant, but finding the remainder of section 16-114-206(a)(1)-(2) unaffected by the decision).

5

However, I find summary dismissal on this basis would not be fair. Plaintiff requested the appointment of an expert (Doc. No. 38) and twice requested the appointment of counsel (Doc. Nos. 3, 31). I denied those requests. (Doc Nos. 8, 34, 39.) Therefore, Plaintiff was essentially unable to obtain a medical expert. Accordingly, I recommend Defendant's Motion for Summary Judgment be denied on this basis.

### B.   Failure to Meet Proof with Proof

Defendant next argues it has properly supported its Motion for Summary Judgment with the Declaration of Dr. Te Cora Ballom and Plaintiff's medical records, and Plaintiff has failed to meet proof with proof by showing a genuine issue as to a material fact. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010). According to Defendant, Dr. Ballom's testimony and Plaintiff's medical records show the medical staff at Forrest City-Low appropriately managed and treated Plaintiff's various conditions during his incarceration there. (Doc. No. 54 at 14.) I have carefully reviewed this evidence. (Doc. No. 60.[2]) For the following reasons, I find summary judgment should be granted on this basis.

#### 1.   Right Shoulder

At Plaintiff's initial medical examination shortly after his arrival at Forrest City-Low in October 2013, Plaintiff reported "a light pain in his right shoulder caused by the long hours of been retrained [sic] in handcuffs attached to a belly chains." (Doc. No. 2 at ¶ 6.) He alleges this pain increased with time, eventually becoming excruciating. (*Id.* at ¶ 10.) He sought treatment through the sick call procedure, which he says was delayed. (*Id.* at ¶¶ 11-13.) He was eventually given a corticosteroid injection and prescribed pain medication. (*Id.* at ¶ 14.) An x-ray and MRI were

---

[2]Because of privacy concerns, Defendant filed Dr. Ballom's Declaration and Plaintiff's medical records under seal. (Doc. Nos. 58-59.)

6

ordered, which were delayed nine and eleven months, respectively. (Doc. No. 2 at ¶¶ 14-15.) Plaintiff eventually requested an evaluation by an orthopedic specialist. (*Id*. at ¶ 18.) This request was granted, and he was seen by orthopedist Bret Sokoloff, M.D., in November 2014 and again in February 2015. (*Id*. at ¶¶ 18-20.) Dr. Sokoloff administered steroid/lidocaine injections to alleviate the pain in Plaintiff's shoulder and discussed with Plaintiff the possibility of a total shoulder replacement. (*Id*. at ¶ 19-20.) Plaintiff argues Defendant breached the applicable standard of care by failing to follow through with this recommended treatment. (*Id*. at ¶ 24.)

Neither Plaintiff's allegations of delays in treatment, nor his disagreement with the course of treatment, amount to negligence on Defendant's part. Dr. Ballom's testimony and the medical records indicate Defendant's treatment of Plaintiff's shoulder was appropriate. Specifically, at his initial medical examination in October 2013, Plaintiff was put on ibuprofen for various ailments, including his shoulder, and his existing acetaminophen prescription was renewed. (Doc. No. 60 at 2.) He was seen by a nurse practitioner in February 2014 for complaints of other ailments. (*Id*.) He was seen again for his shoulder in May 2014, when he received the corticosteroid injection and was also prescribed Meloxicam for pain. (*Id*.) The MRI consultation request was initiated at this visit, but the MRI was not performed because Plaintiff reported a metal plate in his head and possible gunshot shrapnel throughout his body. (*Id.* at 2-3, 5.) Plaintiff's Meloxicam prescription was renewed after a visit to health services in July 2014. (*Id*. at 3.) In August 2014, Plaintiff was examined by a contract physician, who noted severe degenerative joint disease of the right shoulder, as well as limited range of motion and complaints of pain. (*Id.*) This physician discontinued the Meloxicam prescription and prescribed Tylenol #3 instead. (*Id*.) The physician initiated a consultation request for evaluation by an orthopedist as soon as possible, and this request was approved the same day. (*Id*.) The Tylenol #3 prescription was renewed in September 2014 and

7

October 2014 and was changed to ibuprofen in late October 2014. (Doc. No. 60 at 3-4.)

As previously noted, Plaintiff was evaluated by Dr. Sokoloff in November 2014 and received a steroid/lidocaine injection for pain. (*Id*. at 4.) An x-ray of Plaintiff's shoulder revealed joint space collapse, severe arthritis, and mild posterior glenoid wear. (*Id*.) Dr. Sokoloff recommended total shoulder replacement if Plaintiff's symptoms persisted. (*Id*.) After the visit with Dr. Sokoloff, Plaintiff's pain medications continued to be adjusted by health services. (*Id*.) Plaintiff reported less pain and increased range of motion following the steroid/lidocaine injection. (*Id*.) Plaintiff saw Dr. Sokoloff again in February 2015. (*Id*. at 5.) He reported the injection had helped him significantly, but only temporarily; he requested and received another injection. (*Id*.) Dr. Sokoloff recommended total shoulder replacement if approved. (*Id*.).

After that point, Plaintiff's pain medications continued to be adjusted as needed, and he was seen in health services for continued symptoms. (*Id*. at 6-8.) Additionally, Plaintiff underwent an MRI in December 2015. (*Id*. at 7.) A new orthopedic consult request was initiated, and the recommendation of total shoulder replacement was in line for review by the Bureau of Prisons Utilization Review Committee. (*Id*.) In February 2016, Plaintiff was transferred out of Forrest City-Low; his orthopedic consult request and the recommendation of total shoulder replacement were both pending at that time. (*Id*. at 8.) Plaintiff's new unit canceled all pending consultation requests pending their own medical evaluation. (*Id*.) Subsequently, Plaintiff's pain management continued. (*Id*. at 9.)

This evidence indicates there were very few delays in the treatment of Plaintiff's shoulder. Pain management efforts were essentially constant from the time of Plaintiff's arrival at Forrest City-Low until the time of his transfer and beyond. The first orthopedic consult request was approved immediately. Moreover, the delay in performing an MRI was due to Plaintiff's report of a metal

8

plate in his head and possible shrapnel in several parts of his body.

As for Plaintiff's claim that Defendant breached the applicable standard of care by not providing total shoulder replacement, I note Defendant did not refuse to provide this procedure. Rather, the recommendation was still pending at the time of Plaintiff's transfer out of the institution. I understand Plaintiff's frustration with the delay, but the evidence indicates total shoulder replacement surgery is an elective, non-emergent procedure. (Doc. No. 60 at 9.) Accordingly, the recommendation had to undergo review by the Utilization Review Committee. (*Id*.) While bureaucracy can be frustrating, it is an inevitable part of prison life. Additionally, it is worth noting that Dr. Ballom, Regional Medical Director for the Federal Bureau of Prisons and Acting Clinical Director at Forrest City, states that Plaintiff will be considered for any treatment, including surgery, that his condition requires in the future. (*Id*. at 10.)

Finally, even if Defendant had refused to provide total shoulder replacement surgery, Plaintiff has failed to make a *prima facie* showing that this would have violated the standard of care. Dr. Sokoloff recommended the surgery as a possible option for treatment. However, the evidence indicates Plaintiff's pain was managed with medications and injections. Plaintiff's disagreement with the course of treatment is not enough to demonstrate negligence.

For these reasons, Defendant is entitled to judgment as a matter of law on Plaintiff's claims involving his right shoulder.

    2.  Right Hip, Lower Back, and Right Lower Extremity

Plaintiff states he began to experience significant pain in his right hip, lower back, and right leg after being placed in an upper unit and having to climb stairs multiple times per day. (Doc. No. 2 at ¶ 10.) He claims his initial requests to be seen in sick call were delayed. (*Id*. at ¶¶ 11-13.) Plaintiff acknowledges he was ultimately treated with a corticosteroid injection in his lower back and

prescribed Meloxicam for pain; however, he alleges the delay in treatment violated the standard of care. (*Id*. at ¶¶ 14, 24.)

Again, the evidence indicates Defendant's treatment of Plaintiff's ailments was appropriate. Plaintiff was seen by a nurse practitioner in February 2014 for complaints of hip and back pain and numbness in his right leg. (Doc. No. 60 at 2.) He was prescribed Meloxicam for pain, and this prescription was refilled in April 2014. (*Id*.) In May 2014, he was treated with a corticosteroid injection and was again prescribed Meloxicam. (*Id*.) An MRI consultation request was initiated, but, for reasons previously stated, the MRI could not initially be performed. (*Id*. at 3, 5.) Plaintiff was seen again in July 2014, at which time his Meloxicam prescription was renewed. (*Id.* at 3.) As stated above, Plaintiff was examined in August 2014 by a contract physician, who discontinued the Meloxicam prescription and prescribed Tylenol #3 instead. (*Id*.) This prescription was renewed in September 2014 and October 2014. (*Id*.) Plaintiff was seen again in late October 2014, and the prescription was changed to ibuprofen. (*Id*. at 3-4.) Plaintiff was seen again in November 2014 and was prescribed Indomethacin; this prescription was renewed in February 2015. (*Id*. at 4-5.)

Plaintiff's spine and hip were x-rayed during his February 2015 visit to Dr. Sokoloff. (*Id*. at 5.) The x-rays revealed moderate degenerative disc disease, facet degenerative joint disease, malalignment loss of normal lordosis, and moderate scoliosis in his lumbar spine; degenerative disc disease and mild scoliosis in his thoracic spine; and minimal arthritis in his right hip. (*Id*.) Dr. Sokoloff recommended a Medrol dose pack as well as a CT myelogram scan of the lumbar spine. (*Id*.) Plaintiff was prescribed the Medrol dose pack, and this prescription was renewed after Plaintiff was examined in April 2015. (*Id*. at 6.) Plaintiff was x-rayed again in April 2015; the result revealed severe dextroscoliosis with asymmetric compression at L1, L2, and L3. (*Id*.) The x-ray of the sacroiliac joint was negative. (*Id*.) Plaintiff's ibuprofen prescription was renewed in July 2015, and

his steroid prescription was renewed in October 2015. (*Id*.) Plaintiff was scheduled to undergo the CT myelogram in October 2015, but it could not be performed because he had not been off his aspirin medication. (*Id*. at 7.) Plaintiff did undergo a CT in January 2016. (*Id*. at 8.) He was also seen in health services that month and prescribed a new medication, Amitriptyline. (*Id*.) He was transferred out of Forrest City-Low in February 2016, and his pain medications were continued at his new unit. (*Id.* at 8-9.)

Plaintiff's complaints of pain in his hip, back, and leg were addressed and treated throughout his incarceration at Forrest City-Low and afterward. As with his shoulder, the pain management efforts were almost constant. Any delays were minimal. Plaintiff has failed to demonstrate a genuine issue as to a material fact, and Defendant is entitled to summary judgment on Plaintiff's claims involving his hip, back, and leg.

### 3. Hiatal Hernia

Plaintiff states he was diagnosed with a hiatal hernia on October 27, 2014. (Doc. No. 2 at ¶ 16.) He alleges Defendant has "made no efforts to take Plaintiff back to Anatomical Pathology Clinic to adequately treat his diagnosed hernia." (*Id*.) The medical records show Plaintiff was diagnosed with a hiatal hernia following a colonoscopy and esophagogastroduodenoscopy ("EGD") at Forrest City Medical Center. (Doc. No. 60 at 10.) However, the treating physician did not recommend any post-procedure follow-up and did not order any change in medications. (*Id*.) Plaintiff has failed to demonstrate a genuine dispute on this issue, and Defendant is entitled to summary dismissal of his claim regarding the hiatal hernia.

### 4. Esophagitis and Diverticulosis

Plaintiff states he was diagnosed with esophagitis and diverticulosis on October 27, 2014. (Doc. No. 2 at ¶ 16.) He does not make any specific claim of a failure to treat these conditions.

11

These diagnoses also followed the colonoscopy and EGD at Forrest City Medical Center. (Doc. No. 60 at 10.) Again, the treating physician recommended no post-procedure follow-up and ordered no new medications. (*Id*.) Therefore, Plaintiff has failed to demonstrate a genuine issue as to a material fact, and Defendant is entitled to summary judgment on any claims regarding Plaintiff's esophagitis and diverticulosis.

In sum, Defendant's evidence shows prison officials were responsive to Plaintiff's medical needs at every turn and appropriately managed his various conditions. Plaintiff's unsupported statements to the contrary are insufficient at the summary judgment stage. *See Conseco Life Ins. Co.*, 620 F.3d at 909 (quoting *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 569 (2000) ("When the movant makes a prima facie showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

### C.  Allegations of Intentional Conduct

In addition to his negligence claims, Plaintiff states Defendant exercised deliberate indifference to his serious medical needs, maliciously and intentionally subjecting him to an unnecessary and wanton infliction of pain. (Doc. No. 2 at ¶ 21-22.) It is well settled that the FTCA only waives sovereign immunity for negligent acts; constitutional claims are not cognizable against the United States under the FTCA. *See Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982).

## IV.  SUMMARY

The undisputed facts of this case – Plaintiff's own medical records (Doc. No. 60) – show he received constant and appropriate treatment for his various medical conditions. Plaintiff has failed to meet proof with proof in response to Defendant's showing of entitlement to summary judgment. Additionally, Plaintiff's claims of intentional conduct are barred as a matter of law. Therefore, there

is no issue of material fact in dispute and Defendant's Motion for Summary Judgment should be GRANTED. Plaintiff's Motion and Amended Motion for Partial Summary Judgment should be DENIED.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendant's Motion for Summary Judgment (Doc. No. 53) be GRANTED.

2. Plaintiff's Motion and Amended Motion for Partial Summary Judgment (Doc. Nos. 41, 48) be DENIED.

3. Plaintiff's Complaint (Doc. No. 2) be DISMISSED WITH PREJUDICE.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this 21st day of February, 2017.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE